JAMES T. FLYNN, Lieutenant Governor, Secretary Department of Development
You have asked whether section 66.069 (1)(b), Stats., authorizes municipalities owning their own electric companies to cause unpaid electrical bills to become property tax liens against the property to which the power was furnished, regardless of who used the electrical power. Apparently several municipalities have enacted ordinances to this effect, citing section 66.069 (1)(b) as the basis for the ordinances. You report that these ordinances have caused concern among owners of rental property who are being held responsible for paying the delinquent electrical bills of their tenants. In my opinion municipalities have no power under section 66.069 (1)(b) to enact ordinances of this sort, but do have such power under section 66.60 (16). *Page 129 
Though the higher courts in Wisconsin have not addressed the issue, courts from many other states have ruled that explicit statutory authorization must exist before a public utility (or a municipality by means of an ordinance) can impose liability for utility charges upon anyone besides the user or the person who contracted for the service. See Annot., 19 A.L.R.3d 1227, 1232-34 (1968). The need for specific statutory authorization has become the conventional rule. 12 McQuillin Municipal Corporations § 35.38 (1970). I find no such explicit authorization in section 66.069 (1)(b). In pertinent part, section 66.069 (1)(b) provides:
 On October 15 in each year notice shall be given to the owner or occupant of all lots or parcels of real estate to which water has been furnished prior to October 1 by a water utility operated by any town, city or village and payment for which is owing and in arrears at the time of giving such notice . . . On November 16 the officer or department issuing the notice shall certify and file with the clerk a list of all lots or parcels of real estate, giving the legal description thereof, to the owners or occupants of which notice of arrears in payment were given as above specified and which arrears still remain unpaid, and stating the amount of such arrears together with the added penalty thereon as herein provided. Each such delinquent amount, including such penalty, shall thereupon become a lien upon the lot or parcel of real estate to which the water was furnished and payment for which is delinquent, and the clerk shall insert the same as a tax against such lot or parcel of real estate.
Looking at section 66.069 in its entirety, it is apparent that "water utility" as used in subsection (1)(b) is not a generic term for utilities in general. Subsections (1)(a), (1)(c), (2)(c). (2)(d) and (2)(e) refer to public or municipal utilities. Subsection (1)(b), (1)(d) and (2)(b) refer to "water utilities" or water plants. Subsection (2)(a) refers to "water, light or power plant." Thus, section 66.069 specifies when it refers to utilities in general and when it refers to a specific utility. Therefore, section 66.069 (1)(b), which refers to a "water utility," grants no special rights to cities owning electric companies.
An earlier attorney general's opinion, 22 Op. Att'y Gen. 375 (1933), focused upon the legislative history behind section 66.069 (1)(b) (which was numbered 66.01 (11) at the time the 1933 opinion was written; renumbering occurred in chapter 362, Laws of *Page 130 
1947). Before 1933, section 66.069 (1)(b) did apply to utilities besides water utilities. The last sentence of the section read: "This section shall apply also to other public utility service as far as practicable." This last sentence was removed from the statutes by chapter 102, Laws of 1933, leaving the section applicable only to water utilities. The 1933 opinion concluded:
 The delinquent bills for electric service furnished by a municipal utility which become delinquent prior to the passage of ch. 102, Laws 1933, but after the last tax roll was made up, cannot be placed upon the tax roll made up after November 1, 1933, and collected as a delinquent tax against the property to which the service was furnished.
22 Op. Att'y Gen. at 376. After 1933, then, delinquent electric bills could not become liens upon property under section 66.069 (1)(b).
However, twelve years after the Legislature removed the phrase "other public utility service" from section 66.069 (1), the Legislature enacted section 66.60 (16). See ch. 269, Laws of 1945. In my opinion, section 66.60 (16) created authorization for liens of this sort. Section 66.60 (16)(a) reads:
 In addition to all other methods provided by law special charges for current services rendered may be imposed by the governing body by allocating all or part of the cost to the property served. Such may include, without limitation by enumeration, snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, sewer service and tree care.
Section 66.60 (16)(b) creates a lien procedure in regard to these "charges for current services rendered." It provides: "If not paid within the period fixed by the governing body, such a delinquent special charge shall become a lien . . . as of the date of such delinquency, and shall automatically be extended upon the current or next tax roll as a delinquent tax against the property . . . ." In my opinion, the phrase "charges for current services rendered" is broad enough to encompass charges for electricity provided by municipally-owned electric companies. Though electric services are not specifically listed, the Legislature added to section 66.60 (16) the phrase "without limitation because of enumeration." I find no legally significant difference between such services as garbage and refuse *Page 131 
disposal, sewer service, tree care and electric service provided by an electric utility owned by a municipality. Thus, I conclude that section 66.60 (16) represents sufficient statutory authorization for the kinds of ordinances that you are questioning.
BCL:RCB